The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. We're happy to hear argument in T-Mobile v. Howard County Board of Appeals. Good morning. May it please the Court, I'm Scott Thompson on behalf of T-Mobile. The record in this case contains uncontradicted evidence demonstrating that there is adequate sight distance for safe ingress and egress at the Shepherd of the Glen Lutheran Church, demonstrating that the Chief Operating Officer of the Howard County School System has unequivocally stated in writing that the school system will not allow T-Mobile to install a wireless facility at the Glenelg High School, and demonstrating that T-Mobile has an effective absence of coverage in a four square mile area and no reasonable alternatives to remedy that absence of coverage. Accordingly, the Board's denial in this action of T-Mobile's application to install a wireless facility at the Shepherd of the Glen Lutheran Church is not supported by substantial evidence and has the effect of prohibiting T-Mobile from providing wireless service in violation of Section 332C7 of the Communications Act. One thing I want to, turning to the substantial evidence claim, one thing I want to emphasize in this case is what the Board did find. This is not a case where the Board has found that the proposed facility by T-Mobile is inconsistent with the local neighborhood or in character. In fact, the Board found that the proposed facility meets all of the requirements of the local code except for two. For example, the Board found that the proposed facility will be in harmony with the general plan, that its overall intensity and scale are appropriate, that it will not hinder or discourage use or development of the surrounding neighborhood. It found that the gravel driveway that T-Mobile proposes to install will be adequate. And it also found that the wireless facility would accommodate multiple users, is adequately screened from the public, and is stealth all in compliance with Section 131 of the Howard County Code. This is not the problem. The problem is that when you are applying for a conditional use permit and the Board had two particular requirements, one that you should provide safe access and safe egress, and the other is that you should try to locate the facilities on a government structure. Now, in reading Judge Bennett's opinion, it seemed to me you bore the burden in a conditional use permit of proving compliance with those conditions, and it seems to me from reading Judge Bennett's opinion that you sort of breezed into town and treated those requirements in a very cavalier way. You might have gotten what you wanted had you taken them even semi-seriously, but you dealt with them in a cavalier fashion. I disagree with Judge Bennett in that characterization. The evidence before the Board clearly demonstrates that there is, on the first point, adequate sight distance to allow safe egress and egress. For example, even Judge Bennett recognized that a review of the record reflects that there certainly contains substantial evidence that the sight distance is adequate. Tell me what that exactly means. You're talking about where the road comes off of the highway? Sure, Your Honor. But the highway is just a two-lane highway. It's a two-lane road. There's evidence in the record. And then the road to the church goes off of it. The church is mid-block on a two-lane road. Is that what we're talking about, the road that comes out from the church onto the main road? Sure.  There is an existing driveway that serves the church's parking lot. That is not going to be changed. So the question is, is there adequate sight distance for people to pull in and out of that driveway? And, again, the record clearly shows that. But they do it all the time. Obviously, that is a driveway that is adequate to serve the church. How big a church is it? How many members does it have? We don't have evidence, I know, of that. You didn't show any evidence on that. But the parking lot is quite large. You can see it in the diagrams, at least 50-car parking lot. It's a sizable church. But the egress and the – is there anything you could have done to fix that? There's nothing that needs to be fixed. Well, I know, but they say that it was not safe. No, no. Would they offer you any alternative or was there any proposal to fix what their problem was about safe ingress and egress? Let me be clear, Your Honor. The board does not claim that egress and ingress is not safe. What did they say? The board's decision states only that, and I'll quote it. The board states, notwithstanding the fact that the proposed use would generate a very low number of vehicle trips, the petitioner is obligated to demonstrate the driveway's location has adequate sight distance for visits to the compound. In the record, from the board's – from the county's own Department of Planning and Zoning, is evidence that the sight distance to the northeast is over 250 feet and to the southwest is over 400 feet. They say it's not adequate. No, no. They don't say it's not adequate. Yes, they do. They said that T-Mobile didn't introduce evidence. All right. But yet there is – They did introduce evidence. But the point is there is evidence. But you are the one that has the burden here. On this particular point, Your Honor – To show compliance. On this particular point, the county's code simply says that the board must find that there's adequate sight distance. But there was evidence before the board, including testimony from residents, that this particular drive was near a very busy intersection.  Your Honor, if I may, that testimony had to do with – the testimony there was concerned. T-Mobile had proposed to install some additional trees to help screen the facility. That was concern about intersection there. It had nothing to do with the ingress and egress at the parking lot itself. It would be hard for me to believe it had nothing to do with ingress and egress because there's going to be more ingress and more traffic, ingressing and egressing, if there's a cell phone tower there. No, Your Honor. But the overall point is, you know, we're not a zoning board. And you're attempting to make us into a zoning board of appeals or something like that. And, you know, to me, I thought you treated those zoning requirements in a very high-handed and cavalier fashion. And I can't understand why you wouldn't have introduced some testimony from a traffic engineer that said, we don't think there's a problem, but if there is, here's a way we might resolve it and the rest. And the thing about it is, this is not a board that has its backup. I mean, they had granted any number of applications. There's no innate hostility here. I think they granted – there were six cell phone towers in the vicinity of this, and the board – this was the only one that they denied. And very often, we have a situation where a board says, we're not going to do this, we're not going to do this, and they just dig in against any cell phone tower whatsoever. But that isn't this. This is a board that has one of the best and most receptive approaches to cell phone towers. If you just pay the local regulations a little bit of respect and assemble the kind of record that's needed to you, you might well have gotten what you wanted. Well, Your Honor, I believe that the point here is that the record was assembled. There is – And given Judge Wilkerson's question, would you let us know what you think or who has the burden of proof here and what that is? There seems to be some indication that you would say that there was no evidence that this was not safe, whereas I think the position should be that you had the burden of proof to show that this was a safe access. The burden under Section 131B of the county's code, which has to do with ingress and egress, simply says the board must find that there's safe ingress and egress. Under Section 131N, it says that the applicant has the burden of demonstrating that it undertook a diligent effort to cite it on a government structure. As a general matter, obviously T-Mobile is the applicant. My question as it relates to Judge Wilkerson's concern, you don't view it as a burden that you had to establish that this was a safe ingress? T-Mobile generally – The applicant generally has the burden, Your Honor. I will concede that. In this case, there was evidence. So you had the burden in this case? Generally, yes. Generally, sure. You had the burden in this case? Sure, yes. I need an answer to that question because I understand where you're going with it, but you're massaging the answer to the point I need to know because I think it's fundamental to where Judge Wilkerson's question is going. He's saying you have to go and find, establish, get an engineer. If you have a burden to show is safe, you do those things. But if you think all you need to do is just show generally that there's an access and ingress and then the board has to show it's not safe, that's a different inquiry. No, so, Your Honor – And we have to make the determination of where does that burden lie. Sure, Your Honor. Under the county's code, the applicant makes its application and has this burden of showing. Under the federal act, if the board denies, as it did in this action, the question is was there substantial evidence on the record to support the denial. The board claims that there was no evidence about adequacy of sight distance. Our point is, and Judge Bennett even agreed, there is evidence. Judge Bennett called it substantial evidence of the adequacy of the sight distance. The question then becomes, so, okay, board, what is the grounds for claiming that there's no evidence? Again, their denial – We don't even get to this if we determine that you didn't make the diligent efforts with regard to the government structure. And what you did here was a phone call? No, Your Honor. And you didn't know who it was, whether that person was in authority? No, Your Honor. When you're thinking about it, I want to go back to Judge Wilkins' initial concerns in terms of the efforts that you undertook. Is that the way you go in to determine if something is – I mean, you're a huge company. It would seem reasonable for you to go in and determine whether this is an adequate sight by doing a little bit more than that, that there would actually be some type of investigation or some type of report that would come forth and set forth that, in fact, you've undertaken those diligent efforts. In fact, there was, Your Honor. Mr. Kemberling, who was the site acquisition agent with 14 years of experience, testified that it is standard practice in the industry to make an initial contact. If the initial contact is an affirmative no, we will not allow you to do this, then – Well, we don't know the end of the line. Well, in this case, Your Honor, in this case, Mr. Kemberling's notes containing the identity of the other person were destroyed. However, after that – You didn't make him a proposal. That went a little too fast for me. What did you say? He contained the identity of what? Of the person that he spoke to. However, after that – Didn't he remember, or didn't you remember? Apparently, he did not remember at that time because his notes had been destroyed. But the point is, after that, T-Mobile obtained written confirmation from the chief – What, several months later? You got a letter. From the chief, but the point is they obtained written confirmation – You never made him a proposal. But, Your Honor – Assuming the stuff about the telephone's all right, you didn't lay out specifically what you wanted. How would we know what they're responding to? Your Honor – How do we know that they understood what you're doing? Your Honor – Why didn't you submit them a written proposal of what you wanted? Your Honor – And get a written response from the people in authority so you could make your record. Matter of fact, I don't perceive that you're prejudiced, that you can't still go back and do that, can you? Your Honor, it's – You can. It's incredible to believe that the chief operating officer of the Howard County Public Schools is writing a letter – But we don't know who the chief operating officer is. No, the chief – We don't know who it was. Yes, the chief operating officer is – there's a letter in the record from the chief operating officer – We don't know what the letters are responding to, what they're responding to. There's no proposal. But the letter clearly references T-Mobile's application. Do you want to put that thing up on top of the schoolhouse? Or do you want to put it out back on a tree? Or do you want to build a tower somewhere? What were you wanting to do with it over on the school property? The county – You didn't want to put it in the middle of a parking lot? The chief operating officer clearly understood well enough to say that they have denied T-Mobile's desire to install a wireless facility at this school. She did not – it's not credible to believe that the chief operating officer, who is the officer in power to make these decisions, is sending out letters like this, CC – you know, carbon copying – All you're doing is relying on that letter and the ambiguous telephone call evidence. You could have made a better record. You could have made a better record here. And this substantial evidence rule creates a terrific problem for you in that context because substantial evidence to support the decision of the board means what? Less than a preponderance, more than a scintilla, right? Correct. That's not much. No, Your Honor – They had to have substantial evidence and, you know, it's hard to say they didn't have it here. But you didn't even – you never made this record on what your proposal was and what you wanted to do over at the schoolhouse. There's nothing showing that there's a requirement that T-Mobile make a formal written proposal to the school. They've contacted the school. What are they – if the school says no, it's proposing to them – You said it's your burden. It's our burden to demonstrate. And I'm saying if you want to carry the burden, you ought to go down there and make a record on what you're asking the school to do, and you ought to have a record on what the school's saying it won't do. We have a record of the school saying unequivocally that they won't allow T-Mobile to install a wireless facility at the high school. What wireless facility? Where? Any wireless facility at the high school. The letter references says we've denied your proposal. Yeah, but what's your proposal? I don't know what your proposal is. I don't know, and I don't think Judge Bennett knew what it was. But the question is not whether the board understood what the proposal was. It's that the school system understood what was proposed. How do we know what they understood? Because she said so in the letter. It's a proposal. We don't know what the proposal was because you don't have the proposal in there. But, Your Honor, why does it matter what T-Mobile – the board and the court don't – How does it matter? The board and the court don't need to understand what the proposal was. The point is we need to prove that the – You were on notice. By virtue of the statute that these local zoning laws were at least due some respect. It says, you know, there are limitations to it, but it does say that, you know, except as provided in this as nothing in this chapter shall limit or affect the authority of the state over decisions regarding the placement, et cetera, of personal wireless service facilities. So right there in the statute, it says you need to respect, just a little bit of respect for these local zoning ordinances. And then you had our precedent, two earlier cases, both saying one of them, the Fairfax County case, in reviewing a decision of the zoning board, we're not free to substitute our judgment. To the contrary, we must uphold the decision. It goes on. And then in the Albemarle County case, it says courts are not free to substitute their own judgment for that of the board, even if they would decide the matter differently as an original matter. So whether you look at our statute, look at our opinions, our precedent, or whether you look at the statute, you were on notice that some respect, just a little respect, had to be paid to these local zoning ordinances. You're not a ma and pa company. You're a sophisticated company. You come into this community, which has previously granted application after application after application. You give it the back of your hand. That's no way to treat people in a locality. Whose situation are you going to affect? I disagree that the record suggests that T-Mobile treated the local community's requirements cavalierly. There is a record. The point here is the board has ignored the evidence before it. There is evidence about the site distance. There is evidence in writing that the school system will not allow T-Mobile to install a facility. The question is simply whether there is anything that can contradict that letter from the chief operating officer of the school system, saying we won't allow T-Mobile to install a facility at the high school. I see that I've gone over the time that I reserved. We have some time for rebuttal. When you come back for rebuttal, if you will address the other significance in the case that deals with the minimum level coverage required for the Telecommunications Act. I will do that. Thank you, Your Honor. Ms. Whitkey? May it please the court, my name is Melissa Whitkey, and I represent the Howard County Board of Appeals. I'm going to address some of the questions that came up and to clarify a few things that opposing counsel said about the record. Excuse me? What is the burden that the company bore here, and do you differ with the statements that were given by your opposing counsel? I do, and that was actually one matter I wanted to clarify. Section 131G of the Howard County Zoning Regulations states that the applicant for a conditional use bears the burden of proof and persuasion on all questions of fact to be determined by the board. So the applicant, in this case T-Mobile, bore the burden of proof, the burden of production, and of persuading the board on all questions of fact to be determined by the board, including the safe access and also the diligent effort requirement. Do you agree they need some cell coverage down in that area? I don't think that an applicant like T-Mobile would propose to put up a new tower if they didn't need to improve their coverage in some way. I think any decision Well, they're trying to improve the coverage, they say, because the folks down there don't have the coverage, and a lot of the population don't use landlines anymore. They're in an area where the cell coverage is not any good, so if they don't have a landline, you don't have telephone service in your home. Right? Well, the record in this case, Your Honor, does not demonstrate that there is no service in the area. In fact Let me make sure you're getting to Judge King's question, which I think is what is going is the measurableness of the coverage. What the district court determined was that there was some measurable coverage. There was some measurable frequency of coverage that could be determined. And I don't know what that means. I don't know if it means can you get it inside the home, can you get it in a car, ride it down the road, or what is coverage? And this circuit, I don't think, has addressed that issue. No. Well, the circuit has said a few things. In the most recent cases that came out last year, the Fairfax County cases, this court said that it's a fact-specific inquiry, and in each case the question is whether there has been a prohibition of service under the act. And it has instructed district courts to engage in a very fact-specific analysis of the record in answering that question. And you're saying the district court here engaged in a fact-specific analysis and considered the factors here, and that's on the record? Yes. Because it seems as though what the outcome here was a determination, a conclusion that there was a signal, and any signal would be sufficient. Well, no. I don't think that I disagree with that characterization of Judge Bennett's decision that any signal would be sufficient. What he did note was the expert testimony of T-Mobile's expert. He said some measurable radio frequency coverage in the area. But what he also noted, Your Honor, was that the RF expert. That seems to indicate any measurable, if it's some measurable frequency coverage could be, if it's measurable, that's good enough. It doesn't matter whether or not you can get it in the home or get it in the office or a hot tower or a car riding up down the road. Well, what existed, the facts in this case are that there are six T-Mobile towers in a four-mile radius of this site. The RF expert noted dropped calls in the area from surrounding towers. What they do is they catalog a dropped call rate. And his testimony was that any dropped call rate above 2 percent, and this was dropped calls over a three-month period, over 2 percent indicates a gap in coverage, a significant gap. And at the time of the expert report, T-Mobile had been arguing that significant gap was the test. And, of course, in the Fairfax County case, this court rejected that. But in any case, they relied on this testimony that this dropped call rate indicates a lack of reliable in-building and in-vehicle coverage. Following you on this, I think that factors can be used to determine that. What I'm having a problem with is that what you are articulating is not what the judge stated. What you are articulating is what could be found from the evidence and what the evidence could show. But, in essence, the judge simply said some measurable strength, frequency strength, is sufficient. And that doesn't sound like, to me, that's enough.  Maybe some of the other cases we've gone into, and that is the size of the area, the percentage of the dropped calls and all of that. That's not in the order. I know, and I know. And, Your Honor, I acknowledge that Judge Bennett didn't, you know, you've read the quote. He did say that. But he went on to say, and he talked about the RF expert testimony in this case, and he noted the dropped call rates. He also noted that the RF expert acknowledged that the dropped call rate could be a byproduct of the terrain in the area, the tree cover. I mean, this is a rural area of the county. So, you know, the RF expert also acknowledged that. And, actually, the record shows that the expert also said that it's possible that even if they put a tower here, the dropped call rate would not be below 2%. Is this Mr. Brower you're talking about? Oh, I'm sorry, Your Honor. Can you repeat your question? Your expert? Is it Brower, B-R-A-R? Richard Conroy was the expert of T-Mobile. But your, whose expert was Brower then? He testified before the hearing examiner. Oh, before, right. But, I mean, the hearing. He's the board expert. The board doesn't have an expert, Your Honor. Well, then somebody, a fellow named Brower testified before the hearing examiner. Right. The hearing examiner made, you haven't repudiated what your hearing examiner did. Well, the hearing examiner is, it's a de novo appeal from the hearing examiner to the board of appeals. I understand all that. But did you repudiate what your, the evidence presented to your hearing examiner and the hearing examiner's findings? You didn't. You accepted them and said it wasn't enough. No, the board, the board of appeals does not, you know, the list of factors for the conditional use. One of the, the board doesn't evaluate whether they need to fill a lack or improve their coverage. You don't dispute that they need to improve their coverage? I, no, Your Honor, I, I think the record, we don't dispute the facts. We didn't dispute the RF expert's testimony. Our argument before the district court was that even assuming everything he says is true, it's not sufficient to meet their burden in this court. Well, I thought, you don't dispute that they need to improve the cell coverage over there. I don't think that an applicant would, or a company would try to put up a tower if they didn't need to improve their coverage. Well, I don't think they would either. And that's what I'm trying to get to you. Right. A lot of these young lawyers don't like to answer questions that they're asked. They try to answer a question that they wish they were asked. But we really prefer to get an answer to the question we propound. I'm sorry, Your Honor. You don't dispute the fact that there's been a shift away from landlines to mobile phones, right? I, I. People who don't have landlines anymore? I assume that's the case. I know people who don't have landlines. They talked about the emergency calls, need to have service for emergency, for 9-11 calls. I mean, your answer has to be, it's a good question. And your answer has to be, of course there's a shift away from landlines on to mobile phones and to cell phones. And we don't have a problem with the findings of the hearing examiner. The point is, even agreeing to all of that, it still doesn't get to the nub of your argument, which is that the statute gives deference to zoning ordinances, that the zoning ordinances clearly allocate the burden of proof. 131.G talks about conditional uses and the burden of proof. It says the applicant for a conditional use shall have the burden of proof. It's right there in the zoning ordinance. But your position is that, look, we've got a good record. We're not, we understand the shift in electronic, from landlines. We understand all that. And in response to all that, we've approved, you have, T-Mobile has six cell towers within a four-mile radius of the proposed site. And this case may have turned out differently if the party that had the burden of proof had sought to find out, had done due diligence, I guess, with respect to the location of the communication facilities on a government structure or had put in some kind of evidence showing that there would be safe access or egress. All the board, and I think Judge Wynn alluded to this in his question, all the board has to show is that you fell short on one of those two in order to prevail. But you've got a board with a good record here, and all the board is asking is, you know, give us, show us you've tried to respect what we want to do with our zoning laws. Come in, you have the burden of proof. Give us the evidence. Let's talk about this. But instead, what was done, I just, it trampled these regulations underfoot. That's what it did. It's just unbelievably high-handed. Thank you, Judge Wilkinson, for articulating it much better than I have this morning. I completely agree. Can I sit down now? No. Let me tell you the point I was trying to get at. Okay. It seems to me that you two ought to be on the same side, that the evidence is that there's a need for telephone service, and you in Howard County ought to desire to have telephone service in that area. It would make it a more attractive place to live, I would think, and it would help the emergency services in particular. So you have an interest in getting good telephone service there, too. They have an interest in it, and they have an economic interest in it, and they should have done a better job. So I don't understand why we get into big fights over these things and come up here and ask a federal appeals court to decide whether they put a tower one of our predecessors here used to refer to them as Blooming Tower, where, as he said, nobody ever wants them. But they have to have them if we're going to have phone service anymore. And you all have a mutual interest in that. There's a public interest in that, a strong public interest in that. Agreed, Your Honor. There is a very strong public interest in that. On the prohibition of service claim, two of the factors are, I mean, this court has not squarely addressed the level of coverage necessary or the lack of coverage necessary to make out an effective absence of coverage. Addressing Judge King's question, what is the problem here? I mean, don't you want this service in your county? No, I mean, there is service. There are six towers in a four-mile radius. The problem is, first, I guess fundamentally, if you want something enough, a board will go about its way and make it happen is what I'm trying to figure out here. And that helps us to understand if there are aesthetic concerns or there are reasons you don't want so many in it, I can understand that. Is that the problem? Or are you actively seeking this? I don't know if it brings jobs or what it does, but it certainly gives coverage. You know, what the board wants is the applicant to follow the regulations. The community wants the applicant to follow the regulations. But you are not against having the service there. You just want them to do it the right way. The role of the Board of Appeals is to evaluate their fact-finders. I can answer that question, yes. Yes, I mean, the record. And the question then goes back to Judge King. Why don't you work this thing out? You want the service. You just want them to do it the right way. And it seems like a lot less time could be expended rather than coming up here and having us tell you how to run your county and run your business when you can kind of figure this out for your citizens yourself. We didn't note the appeal, Your Honor. And, you know, they're eligible. T-Mobile can reapply for this use at this very location. The zoning regulations permit that. This ruling is without prejudice to them, right? That's right. They can come back to you all with another petition. They can go back to the school board and make a proper record. They can, Your Honor. The zoning regulations expressly provide. This goes back to Judge Wilkinson's point of why would they be doing it this way and ended up coming to Richmond and hiring expensive lawyers and all this stuff if they could have just made a better record and possibly have succeeded in getting cell service out there to people that need it? Yeah, I don't say just possibly. I say very likely would have succeeded because they had succeeded. It's the only one you've turned down. The whole thing doesn't make sense to me. I mean, I read this and I read it and I said there's got to be something somewhere that I don't understand. There's got to be something behind the scenes that's not in this record and doesn't appear that there is. It just doesn't make any sense. And I agree with that. One thing that makes sense to me is there's an allegation that they're not locating this high school. They say, oh, we called and we've been trying to find out. But that answer is pretty easy to find. Doesn't the school board determine that issue? I mean, why don't you just ask? Would you allow this to be put up there? And if they say we need additional information, but from their perspective it says, no, it's not going to happen. But if the answer right now is that they're just not going to allow this, then their contention that this is fruitless might have a little merit. It doesn't matter whether or not you do the study or not if the answer is already no. The record in this case before the Board of Appeals on that issue on the high school, again, was that they had just made a phone call. They couldn't identify who they talked to in the school facilities management office. Doesn't somebody want to know the answer? I mean, we can look at the record. We can limit ourselves at what's been done and follow out the procedure. But when you're in a county, and most counties, the county board and the school board, you kind of know how things are going to work out. That's a pretty easy answer to find out, whether or not they will allow or even consider it to be put there on the condition you show it. What's the applicant's burden to show that? And the applicant has not made a proposal to the school board. But the point is it's not precluded from showing it in the future. If they come and they say, you know, here we've done a little more. We've done our due diligence. We've talked to the school board. We presented Judge King's earlier point. The school board wasn't presented with any kind of proposal. I mean, all it was was a phone call. You know, on something like a cell tower, you don't just say, okay, here's what we got. You present a written proposal. I've never heard of something of this magnitude, this complex, being an oral proposal. You would say, you know, here's what we plan to do. We can work with you if you have objections. A lot of times the school board will say, well, we have a problem with this or that. And the T-Mobile will come back and say, well, we can work with you on it. You know, let's establish a dialogue. And maybe the T-Mobile can make some alterations. There was a lot of testimony before the hearing board that the antenna could be located on existing structures, that the improved cell service could be put on one of the existing cell towers instead of the need to construct an entirely new one. Well, we don't know that either. We're in the dark on this. But your overall point is, well, you know, this is an ongoing process. We just need to get to the point where people are willing to talk and engage in a dialogue and try to find out both what's best for the provision of telephone service without disruption to property values and neighborhoods and the other things that cell towers may present. For all we know, adjustments and alterations could be made to one of the six existing cell towers that would avoid disruption to a particular neighborhood. But you don't get any sense of what's happening unless the evidence is put in the record. That's right, Your Honor. We agree with that. That the record was very vague on what even the proposal was. Ms. Morrison, who was a consultant for T-Mobile, did testify that the lights at Glenelg High School, the school had recently put up lights for a football field, that the existing lights would be, she called it an ideal location. But then all we see is this phone call. And then the letter that comes back, and this letter is in the context of, you know, it's the day before the third night of hearings before the Board of Appeals. It's put in in rebuttal and it says, Dear Mr. Hughes, who was counsel for T-Mobile before the Board, per your request to provide a written statement, our response is that we have denied the request to put a cell phone tower on school system property. I mean, in the hearings on this issue, there was a Mr. James Brent, who was a software engineer, and he presented a case and said, Look, T-Mobile can increase its coverage in the area if it places the directional antenna on existing towers within the search range area. And, you know, rather than us dictating kind of this or that or what have you, just maybe there could be some sort of dialogue between T-Mobile and the Board about having those directional antenna on the existing towers. That might be a solution. You know, we don't know, but it gets back to this point where the two parties have to engage, and I think Judge King really put his finger on it when he said, You know, you folks ought to be after the same thing. And you could if one party just didn't try to run roughshod over the other. Yes, Your Honor, we agree. I see that my time is up now. Unless there are further questions, I would respectfully request that you affirm the district court's judgment. Thompson. Thank you, Your Honor. Judge Wynn requested that I address the effective prohibition claim. Let me first assume you get to it.  But I want to point out that to the extent that the court believes somehow that T-Mobile disrespected or presented some weak presentation to the Board, again, as I point out to begin with, the Board found that T-Mobile had satisfied all of these substantive requirements. The Board found that this is a proposal that's in harmony with the general plan. This is not. I mean, you came up short in two respects. Correct. That's what they found. That's what they claim. Correct. And it's without prejudice to your undertaking to satisfy their concerns. But, Your Honor, to address that issue, their ordinance allows us to reapply only after two years. So the fact that this litigation is spread out doesn't change the fact that we could not have immediately reapplied. There's a two-year period. It just so happens that the two-year period is about how long the litigation period is. Is that running now while you're on appeal? I think about two years. Pardon? That two-year period is running out about now. I don't remember the exact date. It's about run out, hasn't it? So you can go back and repetition. We could, but the point is at the time we could not have. But why didn't you repetition instead of taking the appeal? And couldn't the energy involved and the funds involved in taking this appeal have been used to try to shore up your case? Your Honor, we could not reapply at the time. We would have had to wait two years to reapply. You couldn't have reapplied, but you could have laid the groundwork. But, Your Honor, the point of the Communications Act recognizes that the intent of Congress was the rapid deployment of facilities, waiting an additional two years to try to fill in the effective absence of period. So no petition for waiver of that two-year period? Could you not have gone in and asked them to waive the two-year period and let you file an emergency petition? I don't know, Your Honor. Out of time or something or early? I don't know, Your Honor. Well, you might try to do that. If there's a real need there, it ought to be served. People can't call the fire department or the police department. It's a problem. We agree, Your Honor, and their code says that you have to wait two years. So I assume that they would say that they're going to wait two years from what? From the time of your – I don't know if it's from the time of the decision or the application. I assume it's from the time of the decision. Decision by whom? The Board of Appeals. Once they deny you, you then have to wait two years. They can't deny and give you specifics as to why and you fix it. So you don't have an opportunity to fix it at that point. I don't know, Your Honor. I don't believe so. To that point and to all the questions that have been asked, the Board doesn't say you could – they don't claim that there is, as somebody pointed out, the school system has said, we're not going to allow this. There's testimony that the school system had in fact told another provider, AT&T, recently that they also were not going to allow that. There's clearly a decision by the school system not to allow any wireless at schools. That's not uncommon. I mean, people – let's be clear. People freak out about – I'll tell you the problem we're having here at least where we're going with this. Judge Wilkerson started out with this, and it is a concern that's sort of here while you – it's this whole business that I said, why don't you ask the school board to the other side or why don't you just settle this thing or deal with it if you want this service in. And the problem seems to be you're T-Mobile. You're not a little company. You do this all the time. And how in the world does a company like this go into a county and you rely on a phone call? You've got to have done this before. You've got to have seen it done, and you've got to have people who are experts on how to go in. And what you are seeking to do, there's got to be vast amounts of money involved here, money that's not been made in two years. So what you run the risk is it could be two years where you can come back again. Why would a company from a business perspective take that risk? I mean, there's clearly a way. What's being asked here is not difficult to determine safe access and ingress. You can bring up experts. You can lay out that. That's pretty easy to do. And determine whether that location is available. There's a way to do it. You don't have to just make a phone call. You can spend a lot of money and do an actual investigation and get an answer that says here's the report. This is what we want to do. This is where we want to locate it. This is how it's going to be. And get a board decision that says no. Then you can't do it there. I mean, that's what really is incredulous about this case. Well, Your Honor, the point is, though, the experience of T-Mobile, the experience of T-Mobile is that a phone call is standard. It's sloppy. For a company that's a T-Mobile, we're not talking about a garage operation with a bunch of kids playing with trying to do a little sale operation here. And you do it all. There are cases. You've got cases all over the place. You do it all the time. What is this about? I don't understand it. And, Your Honor, this same procedure, though, the phone call where they confirm that the landlord won't allow a wireless facility has been adequate before. It was adequate in this case. It's almost as if to say you're testing to see how little you can get away with. No, Your Honor, they're making an initial inquiry. They contact the landlord. In this case, there's testimony that they contacted, for example, another church, and the church said no. There was no written proposal to that church, and the board doesn't complain about that. The board is picking and choosing where an oral discussion is adequate and not. And here we've said after the board objected to the oral communication, we backed it up with a letter. I don't get what you're going across yet, at least in terms of what I'm trying to say to you. I don't understand. I mean, you're T-Mobile. You don't pick up a phone when you want to make tons of money. You conduct an investigation. You actually send some people out on the ground, and you send a team of folks. They go and occupy one of these hotels, and then they go in, they go in. They really put effort, and they present these nice, white reports, and then they come forth and they present this stuff in a very professional way. But to go in and say, I made a phone call, and they said no, can't cut it. I mean, it doesn't – I don't understand it. Well, no, Your Honor, there is testimony that they did have a team of people, and one of them, Mr. Kimbling, the initial call is to find out whether they're willing to even hear you out to begin with. If the school had said, sure, we'll listen to that, then sure, they would have gone in with a formal proposal. But when the initial answer, like from the school or from the church is, no, we don't want wireless facilities on our property, then you don't bother them. It's unbelievable because any job application with a transcript and a resume, whether it's to a law firm or for a clerkship or whatever, is far more formal than, and I second my colleague's notion, than the sloppy way that this has been. I can't believe that a project of this magnitude would be advanced in a fashion that is less formal than an aspiring attorney would make to a law firm coming out of law school. It just is unbelievable. If I may, just one last point, Your Honor. I do believe it's important to stop. Go ahead and make one final concluding statement. The point I wanted to make was just that the district court in this action erroneously believed that the relevant issue on the level of service necessary was a complete absence of signal. That's incorrect, as Judge Davis noted in Fairfax. The Fourth Circuit has not ever found that, and, in fact, no other court has reached that extreme position. There is expert witness testimony in this case that T-Mobile has an absence of sufficient coverage in this four-square-mile area. Thank you, Your Honor. We'll come down and re-counsel and move into our second case.
judges: J. Harvie Wilkinson III, Robert B. King, James A. Wynn, Jr.